**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Union Tank Car Company,<br>Plaintiff,<br>v.<br>Big Will Enterprises Inc.,<br>Defendant. | **Case No.:**<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Union Tank Car Company ("UTLX") files this Complaint for Declaratory Judgment against Defendant Big Will Enterprises Inc. ("BWE") and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory judgment of non-infringement and invalidity arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

2. BWE has accused UTLX of infringing claims of U.S. Patent Nos. 8,452,273 ("the '273 Patent"), 8,559,914 ("the '914 Patent"), 8,737,951 ("the '951 Patent"), and 9,049,558 ("the '558 Patent") (collectively, the "Asserted Patents"), and has demanded that UTLX either take a license or cease its accused activities and pay BWE. UTLX seeks a declaratory judgment that it has not infringed and does not infringe the claims of the Asserted Patents and that those claims are invalid. True and correct copies of the '273 Patent, '914 Patent, '951 Patent, and '558 Patent are attached hereto as Exhibits 1, 2, 3, and 4, respectively.

3. UTLX also seeks relief under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2SSS, because BWE sent UTLX a patent infringement demand letter that failed to provide concrete UTLX-specific factual allegations showing how UTLX's actual

products, services, or technology perform numerous limitations of the Asserted Patents or otherwise are covered by their claims.

## PARTIES

4. UTLX is a Delaware corporation with its principal place of business at 181 West Madison Street, Suite 2500, Chicago, Illinois 60602.

5. BWE is a Canadian company headquartered at 4573 West 1st Avenue, Vancouver, British Columbia V6R 1H7, Canada.

## JURISDICTION AND VENUE

6. This action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

7. This Court has subject matter jurisdiction over UTLX's claims for declaratory judgment of patent non-infringement and invalidity pursuant to 28 U.S.C. §§ 1331 and 1338(a). The Court is authorized to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

8. This Court has supplemental jurisdiction over UTLX's state-law claim in Count IX pursuant to 28 U.S.C. § 1367(a) because that claim forms part of the same case or controversy as UTLX's federal patent law claims and arises from the same nucleus of operative facts, including BWE's Demand Letter and its assertion of the Asserted Patents against UTLX.

9. This Court has personal jurisdiction over BWE consistent with the Due Process Clause of the United States Constitution and the Illinois long-arm statute, 735 ILCS 5/2-209. BWE purposefully directed patent enforcement activities at Illinois and this District by, among other things, sending its Demand Letter to UTLX's President at UTLX's principal place of business in Chicago, Illinois, accusing UTLX of infringing the Asserted Patents, and demanding that UTLX either obtain a license or cease its accused activities and pay BWE. UTLX's claims arise directly out of and relate to those Illinois-directed enforcement activities. BWE has also directed

substantially similar patent enforcement communications to other companies in this District, including rail industry participants located in this District.

10. In the alternative, if the Court determines that BWE is not subject to personal jurisdiction under Federal Rule of Civil Procedure 4(k)(1)(A), BWE is subject to personal jurisdiction in this Court pursuant to Federal Rule of Civil Procedure 4(k)(2). This action arises under federal law, BWE has sufficient contacts with the United States as a whole, and the exercise of jurisdiction over BWE is consistent with the United States Constitution and laws.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(c)(3) because BWE is a foreign entity that does not reside in the United States and therefore may be sued in any judicial district. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to UTLX's claims occurred in this District.

## UTLX AND ITS BUSINESS

12. UTLX is a leading designer, manufacturer, lessor, and maintenance provider of railroad tank cars and other specialized railcars. UTLX traces its history to 1891 and, together with its Canadian affiliate Procor Limited ("Procor"), is owned by Marmon Holdings, Inc.

13. In the early 2000s, UTLX developed internally a proprietary fleet-management and customer-service software application known as "Link-Net." Link-Net provides functionality relating to car tracing, repair-service requests, fleet-management reporting, billing information, leasing information, and customer notifications concerning the status of railcars.

14. UTLX has used Link-Net since at least as early as 2002. Link-Net is a fleet-management and customer-service application, not the underlying telematics or sensor-processing technology used in third-party Remote Monitoring Equipment ("RME"), and was not developed to perform the accelerometer- or sensor-processing operations claimed by the Asserted Patents.

15. Telematics technology is not a core component of UTLX's business. UTLX and Procor operate railcar fleets comprising approximately 118,000 railcars. Of that total fleet, only approximately 2,217 UTLX railcars and 252 Procor railcars are registered as equipped with RME, including GPS units and similar telematics devices, representing approximately 2.5% and 0.8% of their respective fleets. The telematics functionality associated with those railcars is provided through hardware, software, or services supplied by independent third-party vendors. UTLX does not develop, own, or control the underlying GPS, accelerometer, sensor, or telematics technology incorporated into such third-party equipment.

16. UTLX is not, and has never been, a member of RailPulse, a coalition of rail-industry participants that operates an industry-wide railcar telematics platform. UTLX does not use or subscribe to RailPulse or any RailPulse platform, portal, database, or API in connection with its fleet-management or operational activities. Link-Net does not integrate with, exchange data with, or otherwise operate as part of any RailPulse system or architecture.

## BWE AND ITS BUSINESS

17. BWE claims to own all right, title, and interest in and to the Asserted Patents and asserts the right to license and enforce them.

18. On information and belief, BWE is a non-practicing entity that does not manufacture or sell products or services practicing the Asserted Patents and instead engages in licensing and enforcing its patent portfolio, including through patent infringement litigation against operating companies.

19. Since 2020, BWE has filed more than thirty patent infringement lawsuits against operating companies in a wide array of industries, repeatedly asserting one or more of the Asserted Patents (the "Prior Lawsuits"). These defendants have included, among others, companies in the

automotive, transportation, telematics, insurance, logistics, and technology industries. *See, e.g., Big Will Enterprises Inc. v. Enterprise Holdings, Inc.*, Case No. 1-26-cv-00652 (WDTX) (filed March 18, 2026); *Big Will Enterprises Inc. v. Frotcom International, S.A.*, Case No. 1-25-cv-01929 (WDTX) (filed November 25, 2025); *Big Will Enterprises Inc. v. Mitsubishi Corporation (Americas) et al.*, Case No. 1-25-cv-01650 (WDTX) (filed October 15, 2025); *Big Will Enterprises, Inc. v. Geometris LP*, Case No. 4-25-cv-03961 (SDTX) (filed August 20, 2025); *Big Will Enterprises Inc. v. Loomis Armored Us, LLC*, Case No. 1-25-cv-01063 (WDTX) (filed July 7, 2025); *Big Will Enterprises Inc. v. Knight-Swift Transportation Holdings, Inc.*, Case No. 1-25-cv-00941 (WDTX) (filed June 18, 2025); *Big Will Enterprises Inc. v. Osram GMBH et al.*, Case No. 1-25-cv-00179 (WDTX) (filed February 6, 2025); *Big Will Enterprises Inc. v. Rivian Automotive, Inc.*, Case No. 1-25-cv-00129 (WDTX) (filed January 28, 2025); *Big Will Enterprises Inc. v. Huzhou Dingchen Trading Co., Ltd. et al.*, Case No. 1-24-cv-01392 (WDTX) (filed November 14, 2024); *Big Will Enterprises Inc. v. Shenzhen Viofo Technology Co., Ltd.*, Case No. 1-24-cv-01393 (WDTX) (filed November 14, 2024); *Big Will Enterprises Inc. v. Kia America, Inc.*, Case No. 1-24-cv-01200 (WDTX) (October 8, 2024); *Big Will Enterprises Inc. v. Matrix Telematics Limited*, Case No. 1-24-cv-00871 (WDTX) (filed August 1, 2024); *Big Will Enterprises Inc. v. Solutions Into Motion Limited*, Case No. 1-24-cv-00833 (WDTX) (filed July 24, 2024); *Big Will Enterprises Inc. v. Aware360 Ltd.*, Case No. 1-24-cv-00799 (WDTX) (filed July 18, 2024); *Big Will Enterprises Inc. v. Safe Apps Limited*, Case No. 2-24-cv-00418 (EDTX) (filed June 4, 2024); *Big Will Enterprises, Inc. v. Earnix, Inc.*, Case No. 4-24-cv-00069 (EDTX) (filed January 25, 2024); *Big Will Enterprises Inc. v. Earnix, Inc.*, Case No. 4-24-cv-00078 (NDTX) (January 23, 2024); *Big Will Enterprises Inc. v. SafeDrivePod International BV*, Case No. 1-24-cv-00042 (WDTX) (filed January 11, 2024); *Big Will Enterprises Inc. v. Autoliv, Inc. et al.*, Case No. 4-23-

cv-04847 (SDTX) (filed December 29, 2023); *Big Will Enterprises Inc. v. Overhaul Risk Advisory Services, LLC et al.*, Case No. 6-23-cv-00774 (WDTX) (filed November 13, 2023); *Big Will Enterprises Inc. v. GreenRoad Technologies Inc.*, Case No. 6-23-cv-00690 (WDTX) (filed September 30, 2023); *Big Will Enterprises Inc. v. The American Automobile Association, Inc.*, Case No. 6-23-cv-00571 (WDTX) (filed August 6, 2023); *Big Will Enterprises Inc. v. Uber Technologies, Inc. d/b/a Uber*, Case No. 6-23-cv-00403 (WDTX) (May 24, 2023); *Big Will Enterprises Inc. v. Alinsco Managing General Agency, Inc.*, Case No. 6-23-cv-00341 (WDTX) (filed May 9, 2023); *Big Will Enterprises Inc. v. Solera Holdings Inc.*, Case No. 4-23-cv-00257 (NDTX) (filed March 14, 2023); *Big Will Enterprises Inc. v. The Allstate Corporation et al.*, Case No. 2-23-cv-00090 (EDTX) (filed March 3, 2023); *Big Will Enterprises Inc. v. Solera Holdings Inc.*, Case No. 4-23-cv-00197 (NDTX) (filed February 25, 2023); *Big Will Enterprises Inc. v. Nationwide Mutual Insurance Company*, Case No. 6-22-cv-00993 (WDTX) (filed September 21, 2022); *Big Will Enterprises Inc. v. Unaliwear, Inc.*, Case No. 6-20-cv-00351 (WDTX) (filed April 30, 2020); *Big Will Enterprises Inc. v. Montblanc North America, LLC*, Case No. 6-20-cv-00354 (WDTX) (filed April 30, 2020); *Big Will Enterprises Inc. v. Kronoz LLC*, Case No. 5-20-cv-00027 (SDTX) (filed February 29, 2020); *Big Will Enterprises Inc. v. Unaliwear, Inc.*, Case No. 6-20-cv-00040 (WDTX) (filed January 22, 2020).

20. BWE has filed its Prior Lawsuits exclusively in federal district courts in Texas.

21. BWE has voluntarily dismissed with prejudice numerous Prior Lawsuits within months of filing, including actions that terminated before substantial merits litigation occurred. This pattern is consistent with BWE's use of patent infringement litigation as part of its patent licensing and enforcement activities.

22. BWE sent UTLX a demand letter dated July 13, 2026, regarding the Asserted Patents (the "Demand Letter"). The Demand Letter was addressed to the President of UTLX and Procor, at UTLX's principal place of business in Chicago, Illinois. A true and correct copy of the Demand Letter is attached hereto as Exhibit 5.

23. Although dated July 13, 2026, the United States Postal Service label affixed to the envelope in which UTLX received the Demand Letter reflects an origin date of July 28, 2026, fifteen days after the date appearing on the Demand Letter and after BWE's two-week response deadline had already expired.

24. In the Demand Letter, BWE: (a) claims ownership of the Asserted Patents; (b) accuses UTLX of infringing the Asserted Patents through an alleged "integrated railcar telematics architecture" involving Link-Net, RailPulse, and third-party telematics hardware; (c) provides charts purporting to map claim limitations of the Asserted Patents onto what BWE calls UTLX's "Integrated Railcar Telematics Architecture (Link-Net / RailPulse)"; (d) demands that UTLX either enter into a license with BWE or cease use of the allegedly infringing technologies and compensate BWE for past use; (e) demands a response within two weeks of the date appearing on the Demand Letter; and (f) states that BWE is fully prepared to enforce its intellectual property rights if this matter cannot be resolved cooperatively.

25. At or around the same time, BWE sent substantially similar patent enforcement demand letters to other participants in the railcar industry, including at least GATX Corporation. GATX Corporation subsequently filed a declaratory judgment action against BWE in this District. *GATX Corporation v. Big Will Enterprises Inc.*, No. 1:26-cv-08492 (N.D. Ill. filed July 17, 2026).

26. BWE's conduct creates a substantial and immediate controversy concerning UTLX's alleged infringement of the Asserted Patents. BWE expressly accused UTLX of

infringement, demanded that UTLX take a license or cease its allegedly infringing activities and compensate BWE for past use, imposed a two-week response deadline, and stated that it was fully prepared to enforce its intellectual property rights if the matter could not be resolved cooperatively. BWE also has an extensive history of filing patent infringement actions to enforce the Asserted Patents and, contemporaneously with its assertions against UTLX, asserted related patent claims against another railcar industry participant, GATX Corporation, resulting in litigation in this District.

27. Accordingly, an actual, definite, concrete, and justiciable controversy exists between UTLX and BWE concerning UTLX's alleged infringement of, and the validity of, the claims asserted against UTLX under the Asserted Patents. This controversy is of sufficient immediacy and reality to warrant declaratory relief.

**THE ASSERTED PATENTS AND BWE'S INFRINGEMENT ALLEGATIONS**

28. UTLX developed and began using Link-Net years before the earliest claimed priority date of any of the Asserted Patents. UTLX began using Link-Net at least as early as 2002. The earliest claimed priority date among the Asserted Patents is January 16, 2008.

29. The '273 Patent and '558 Patent are related patents that claim priority to the same three provisional applications filed in 2012. Both patents are directed to systems and methods for determining a "mobile thing motion activity" ("MTMA") associated with a "mobile thing" ("MT") using movement data obtained from a "wireless communication device" ("WCD") transported by the MT. The patents disclose, among other things, receiving accelerometer data (and, in the '558 Patent, other sensor data) indicative of movement of the WCD, determining reference data from a set of sensor data, using the reference data to calculate or normalize subsequent movement data, and determining an MTMA based on the resulting movement data.

30. The ’914 Patent and ’951 Patent are related patents directed to “interactive personal surveillance and security” (“IPSS”) systems and methods. The ’951 Patent is a continuation-in-part of the application that issued as the ’914 Patent, and both claim priority to a provisional application filed in 2008. The patents disclose systems and methods in which a portable or wireless communication device collects information concerning a user or the user’s surroundings, uses sensor or other data to assess the user’s activity or circumstances, selects or changes a surveillance mode based on that assessment, and causes the device or a remote computer to take a responsive action, such as collecting or transmitting surveillance information, activating an alarm, or contacting another person or device.

31. BWE’s infringement allegations in the Demand Letter rest centrally on the premise that Link-Net and RailPulse together form what BWE calls UTLX’s “Integrated Railcar Telematics Architecture (Link-Net / RailPulse).” That premise is incorrect. UTLX is not a member of RailPulse, does not use or subscribe to RailPulse in its fleet-management or operational activities, and Link-Net does not integrate with, exchange data with, or otherwise operate as part of any RailPulse system or architecture.

32. Upon information and belief, BWE’s infringement allegations appear to rely heavily on publicly available materials and generalized information concerning the railcar-telematics industry, RailPulse, and third-party telematics products, rather than on information specific to UTLX’s actual systems, operations, or the limited extent to which third-party telematics equipment is used in connection with UTLX’s fleet.

33. The Demand Letter repeatedly qualifies material factual assertions concerning UTLX’s accused systems with phrases such as “on information and belief,” “may include,” “is

reasonably understood to be equipped," and similar qualifying language, rather than identifying concrete facts concerning the specific technologies, systems, or equipment actually used by UTLX.

34. UTLX has not infringed and does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim asserted by BWE against UTLX under any of the Asserted Patents. In addition, the claims asserted by BWE against UTLX are invalid.

**COUNT I**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '273 PATENT**

35. UTLX incorporates and realleges each allegation in paragraphs 1 through 34 above as though fully set forth herein.

36. BWE has accused UTLX of infringing claims 1–23 of the '273 Patent, including independent claims 1, 12, and 22, through what BWE characterizes as UTLX's "Integrated Railcar Telematics Architecture (Link-Net / RailPulse)."

37. Each of independent claims 1, 12, and 22 requires, among other things, the receipt of acceleration data from an accelerometer associated with a wireless communication device ("WCD") transported by a mobile thing ("MT"), the determination or computation of reference data from that acceleration data, the use of the reference data to normalize or calculate movement data, and the determination or identification of a motion activity associated with the MT (referred to in the '273 Patent as an "MTMA") based on the resulting movement data.

38. UTLX does not itself perform those claimed sensor-processing operations. Link-Net is a fleet-management and customer-service application and was not developed to receive or process accelerometer data, recognize or determine accelerometer-based reference data, normalize acceleration data in a claimed reference framework, calculate movement data from such reference data, or determine an MTMA from such movement data.

39. UTLX likewise does not develop, manufacture, or control the accelerometers, sensors, wireless communication devices, firmware, or sensor-processing technology used in third-party telematics or RME equipment associated with UTLX railcars. To the limited extent UTLX railcars are equipped with such equipment, the underlying telematics and sensor functionality is supplied by independent third-party vendors.

40. BWE's charts in the Demand Letter do not identify facts showing that UTLX performs the particular accelerometer-processing steps required by claims 1, 12, or 22. Instead, BWE equates generalized railcar information and functions (such as location, vibration, shock, condition, maintenance, repair, status, thresholds, historical information, and other operational data) with the specific acceleration-data, reference-framework, normalization, movement-data, and MTMA limitations recited by the claims.

41. For example, claim 1 requires recognizing a particular set of accelerometer data samples as a reference defining a relationship between the orientation of the WCD and a two-dimensional coordinate system, computing reference data based on that particular reference set, calculating movement data in that coordinate system based on the reference data, and determining an MTMA from the resulting movement data. UTLX does not perform those operations through Link-Net or otherwise.

42. Claim 12 similarly requires determining from accelerometer data a reference framework in two dimensions, normalizing subsequent acceleration data using that reference data so that the subsequent data can be analyzed in that two-dimensional space, and identifying an MTMA based on the normalized data. UTLX does not perform those operations through Link-Net or otherwise.

43. Claim 22 likewise requires computing reference data that defines a relationship between accelerometer sample values and a reference framework enabling comparison of three-dimensional data sets, calculating movement data based on that reference data, and determining an MTMA based on that movement data. UTLX does not perform those operations through Link-Net or otherwise.

44. BWE's charts in the Demand Letter also rely repeatedly on RailPulse and purported "RailPulse-compatible" systems as components of the accused architecture. UTLX is not a member of RailPulse, does not use or subscribe to RailPulse, and Link-Net does not integrate with, exchange data with, or operate as part of RailPulse. Accordingly, RailPulse functionality cannot be attributed to UTLX as part of the accused Link-Net system.

45. Because UTLX does not perform every step of any asserted method claim of the '273 Patent, either itself or through acts attributable to UTLX, UTLX does not directly infringe the asserted claims under 35 U.S.C. § 271(a).

46. UTLX also does not induce infringement of the '273 Patent under 35 U.S.C. § 271(b). UTLX has not knowingly and intentionally encouraged any third party to perform all limitations of any asserted claim of the '273 Patent with knowledge that the encouraged conduct constitutes infringement.

47. UTLX does not contributorily infringe the '273 Patent under 35 U.S.C. § 271(c). UTLX does not sell, offer to sell, or import a component of a patented combination, or a material or apparatus for use in practicing a patented process, that constitutes a material part of the claimed invention, is especially made or especially adapted for use in infringement, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

48. UTLX therefore has not infringed and does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the ’273 Patent asserted by BWE against UTLX.

49. UTLX is entitled to a declaratory judgment that it has not infringed and does not infringe the ’273 Patent.

## COUNT II
## DECLARATORY JUDGMENT OF INVALIDITY OF THE ’273 PATENT

50. UTLX incorporates and realleges each allegation in paragraphs 1 through 34 above as though fully set forth herein.

51. The claims of the ’273 Patent asserted by BWE against UTLX are invalid under 35 U.S.C. § 101 because they are directed to patent-ineligible subject matter.

52. The asserted claims are directed to the collection, mathematical processing, and classification of movement-related data. For example, claim 1 receives acceleration data, identifies selected data as a reference, computes reference data defining a coordinate relationship, mathematically derives movement data using the reference data, and determines an MTMA from the resulting data.

53. The asserted claims do not recite an improvement to the operation or functionality of an accelerometer, wireless communication device, processor, or other computing technology. Rather, they use conventional sensing and computing components as tools for acquiring data and performing mathematical analysis and classification of that data.

54. The recited reference-data, coordinate-transformation, movement-calculation, and activity-classification operations do not themselves constitute a technological improvement to the underlying sensing or computing devices. The claims instead use those devices to obtain

information, mathematically transform that information, and classify the resulting information according to a motion activity.

55. The additional claim limitations, considered individually and in combination, do not transform that patent-ineligible data-processing concept into patent-eligible subject matter. The claims rely on accelerometers, wireless communication devices, mathematical transformations, statistical analysis, and activity classification performing their ordinary functions.

56. The dependent claims add limitations concerning, among other things, rotation matrices, statistical metrics, frequency-domain processing, scoring, and activity-based actions, but those limitations likewise concern the collection, mathematical processing, analysis, or use of sensor-derived information and do not recite a technological improvement sufficient to render the claimed subject matter patent eligible.

57. The ’273 Patent itself acknowledges that, before its claimed priority date, researchers had used accelerometer data to determine a person’s motion activity and had employed statistical techniques for doing so. The specification likewise describes the use of conventional mathematical and statistical techniques (including averages, standard deviation or variance, root mean square calculations, higher-order moments, and frequency-domain analysis) to classify motion activity. The asserted claims employ such sensing and mathematical-processing techniques to improve the accuracy with which movement-related information is classified and to permit actions to be taken based on the resulting classification, rather than reciting an improvement to the operation of the accelerometer, wireless communication device, or computing hardware itself.

58. UTLX therefore is entitled to a declaratory judgment that the claims of the ’273 Patent asserted by BWE against UTLX are invalid under 35 U.S.C. § 101.

59. UTLX reserves the right to assert additional grounds of invalidity, including under 35 U.S.C. §§ 102, 103, and 112, as warranted by further investigation, discovery, and the development of the record. This includes, but is not limited to, grounds of invalidity based on prior art, including publicly available information demonstrating that Link-Net was in use before the priority dates of the Asserted Patents.

## COUNT III
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '914 PATENT

60. UTLX incorporates and realleges each allegation in paragraphs 1 through 34 above as though fully set forth herein.

61. BWE has accused UTLX of infringing independent claim 15 of the '914 Patent and claims dependent from claim 15 through what BWE characterizes as UTLX's "Integrated Railcar Telematics Architecture (Link-Net / RailPulse)."

62. Claim 15 requires, among other things, determining, by a computing device, a "user activity and/or user surroundings," determining a "surveillance mode" corresponding to that user activity or surroundings, facilitating a "user-defined response" to the user activity or surroundings, and communicating "surveillance information" to a remotely located computer device.

63. UTLX does not perform those claimed personal-surveillance functions. Link-Net is a fleet-management and customer-service application that manages information concerning railcars as physical assets, including car location and status, repair and maintenance information, leasing and billing information, and customer notifications. Link-Net does not determine a human user's activity or surroundings, determine a surveillance mode corresponding to such activity or surroundings, facilitate a user-defined response to such activity or surroundings, or communicate surveillance information concerning such a human user.

64. To the limited extent UTLX railcars are equipped with third-party telematics or remote-monitoring equipment, that equipment is used to monitor or report railcar-related information such as location, movement, condition, or equipment status. Such railcar monitoring is not the determination of a human user's activity or surroundings, the selection of a personal-surveillance mode, or the facilitation of a user-defined response to a human user's activity or surroundings as required by claim 15.

65. BWE's charts in the Demand Letter do not identify facts showing that UTLX performs the limitations of claim 15. Instead, BWE equates ordinary railcar and fleet-management concepts with materially different limitations of the claim. For example, BWE equates railcar movement, location, dwell, geofence status, condition, repair status, maintenance status, customer requirements, and similar asset-related information with a "user activity and/or user surroundings," and equates maintenance, repair, inspection, customer-service, and asset-management workflows with a corresponding "surveillance mode."

66. BWE similarly equates shop requests, status reports, action alerts, planned inspections, maintenance workflows, release notifications, and customer communications with a "user-defined response," and equates ordinary railcar status, repair, maintenance, inspection, condition, and operational information with "surveillance information." Those generalized analogies do not establish that UTLX practices the specific limitations recited in claim 15.

67. Because UTLX does not perform every step of claim 15 or any asserted dependent claim, either itself or through acts attributable to UTLX, UTLX does not directly infringe the asserted claims of the '914 Patent under 35 U.S.C. § 271(a).

68. UTLX also does not induce infringement of the '914 Patent under 35 U.S.C. § 271(b). UTLX has not knowingly and intentionally encouraged any third party to perform all

limitations of any asserted claim of the ’914 Patent with knowledge that the encouraged conduct constitutes infringement.

69. UTLX does not contributorily infringe the ’914 Patent under 35 U.S.C. § 271(c). UTLX does not sell, offer to sell, or import a component of a patented combination, or a material or apparatus for use in practicing a patented process, that constitutes a material part of the claimed invention, is especially made or especially adapted for use in infringement, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

70. UTLX therefore has not infringed and does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the ’914 Patent asserted by BWE against UTLX.

71. UTLX is entitled to a declaratory judgment that it has not infringed and does not infringe the ’914 Patent.

**COUNT IV**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE ’914 PATENT**

72. UTLX incorporates and realleges each allegation in paragraphs 1 through 34 above as though fully set forth herein.

73. The claims of the ’914 Patent asserted by BWE against UTLX are invalid under 35 U.S.C. § 101 because they are directed to patent-ineligible subject matter.

74. Claim 15 is directed to the abstract process of determining a person’s activity or surroundings, selecting a response appropriate to those circumstances, facilitating that response, and communicating information concerning the circumstances to another location.

75. Claim 15 recites those functions at a high level of generality and requires only a generic computing device to perform the claimed determining, facilitating, and communicating functions. The claim does not recite a particular technological mechanism for determining user

activity or surroundings, selecting the surveillance mode, implementing the user-defined response, or communicating the surveillance information.

76. The use of a generic computing device to automate those information-gathering, decision-making, response, and communication functions does not constitute an improvement to computer or communications technology. Nor does arranging those conventional functions in the claimed sequence transform the abstract process into a technological invention.

77. The additional limitations of the asserted dependent claims, including automatically activating a response, assigning a risk level, transmitting information to a database, notifying contacts, and matching sensor data to an algorithm using a user-defined parameter, likewise employ conventional computing and communications functionality to implement the same abstract surveillance-and-response process.

78. Considered individually and as an ordered combination, the limitations of the asserted claims do not add a technological improvement or other feature sufficient to transform the claimed abstract process into patent-eligible subject matter.

79. UTLX therefore is entitled to a declaratory judgment that the claims of the ’914 Patent asserted by BWE against UTLX are invalid under 35 U.S.C. § 101.

80. UTLX reserves the right to assert additional grounds of invalidity, including under 35 U.S.C. §§ 102, 103, and 112, as warranted by further investigation, discovery, and the development of the record. This includes, but is not limited to, grounds of invalidity based on prior art, including publicly available information demonstrating that Link-Net was in use before the priority dates of the Asserted Patents.

## COUNT V
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE ’951 PATENT

81. UTLX incorporates and realleges each allegation in paragraphs 1 through 34 above as though fully set forth herein.

82. BWE has accused UTLX of infringing independent claim 1 of the ’951 Patent and claims dependent from claim 1 through what BWE characterizes as UTLX’s “Integrated Railcar Telematics Architecture (Link-Net / RailPulse).”

83. Claim 1 requires a wireless communications device (“WCD”) having computer-program instructions that: (a) enter a first mode of operation involving a first investigation process in which one or more sensors capture first data; (b) determine whether that first data is indicative of an activity relating to “a user need for assistance, an accident, or a crime”; and (c), when the first data may involve such activity, enter a second, different mode of operation involving a second investigation process to capture additional sensor data further indicative of the activity.

84. UTLX does not make, use, sell, offer to sell, or import a WCD having those claimed instructions. Link-Net is not a WCD and does not contain instructions to conduct the claimed first and second investigation processes for determining whether sensor data relates to a user’s need for assistance, an accident, or a crime.

85. Nor does UTLX develop or control the software or firmware in the third-party telematics or RME equipment used on the limited number of UTLX railcars equipped with such technology. The telematics functionality associated with those railcars is supplied by independent third-party vendors and is used to monitor railcar-related conditions such as location, movement, or equipment condition.

86. BWE’s charts in the Demand Letter do not identify facts showing the existence in any UTLX product or system of the claimed first investigation process, the claimed determination

concerning "a user need for assistance, an accident, or a crime," or the claimed conditional transition into a second, different investigation process. Instead, BWE equates ordinary railcar monitoring with the claimed first investigation process; equates such matters as derailment-related conditions, leaks, spills, abnormal movement, railcar damage, maintenance needs, and inspection needs with an activity relating to a "user need for assistance, an accident, or a crime"; and equates follow-up repair, maintenance, inspection, alerting, or customer-service workflows with the claimed second investigation process.

87. Those generalized railcar-monitoring and operational workflows do not satisfy the specific limitations of claim 1 requiring computer-program instructions that determine whether first sensor data is indicative of activity relating to a user need for assistance, an accident, or a crime and, based on that determination, cause the WCD to enter a different second investigation mode to capture further sensor data indicative of that activity.

88. Because UTLX does not make, use, sell, offer to sell, or import a device meeting every limitation of claim 1 or the asserted dependent claims, UTLX does not directly infringe the asserted claims of the '951 Patent under 35 U.S.C. § 271(a).

89. UTLX also does not induce infringement of the '951 Patent under 35 U.S.C. § 271(b). UTLX has not knowingly and intentionally encouraged any third party to practice every limitation of any asserted claim of the '951 Patent with knowledge that the encouraged conduct constitutes infringement.

90. UTLX does not contributorily infringe the '951 Patent under 35 U.S.C. § 271(c). UTLX does not sell, offer to sell, or import a component of a patented combination, or a material or apparatus for use in practicing a patented process, that constitutes a material part of the claimed

invention, is especially made or especially adapted for use in infringement, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

91. UTLX therefore has not infringed and does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the ’951 Patent asserted by BWE against UTLX.

92. UTLX is entitled to a declaratory judgment that it has not infringed and does not infringe the ’951 Patent.

**COUNT VI**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE ’951 PATENT**

93. UTLX incorporates and realleges each allegation in paragraphs 1 through 34 above as though fully set forth herein.

94. The claims of the ’951 Patent asserted by BWE against UTLX are invalid under 35 U.S.C. § 101 because they are directed to patent-ineligible subject matter.

95. Claim 1 is directed to the abstract process of gathering information concerning a potentially significant event, evaluating that information to determine whether further investigation is warranted, and, based on that determination, escalating the investigation to obtain additional information.

96. Claim 1 implements that process through generic components, including a wireless communications device, memory, processors, and one or more sensors. The claim does not recite a particular sensor, detection algorithm, data-analysis technique, or technological mechanism for determining whether the first data is indicative of a user need for assistance, an accident, or a crime. Instead, it claims the functional result of making that determination and, based on the determination, entering a different investigation mode to collect additional data.

97. Using generic memory, processors, sensors, and a wireless communications device to automate that information-gathering, evaluation, and escalation process does not improve the operation of those components or otherwise provide a technological solution to a technological problem. Those components perform their ordinary functions of storing instructions, processing information, collecting data, and changing operating modes.

98. The additional limitations of the asserted dependent claims, including collecting images, video, or audio, communicating information to remote systems, activating or requesting activation of alarms, comparing data to reference data, sampling less sensor data in a first investigation process than in a second investigation process, and increasing a sensor sampling rate in the second mode, likewise employ information-gathering, processing, and communications functions and do not recite a technological improvement sufficient to render the claimed subject matter patent eligible.

99. Considered individually and as an ordered combination, the limitations of the asserted claims do not transform the claimed gather-evaluate-escalate process into patent-eligible subject matter.

100. UTLX therefore is entitled to a declaratory judgment that the claims of the ’951 Patent asserted by BWE against UTLX are invalid under 35 U.S.C. § 101.

101. UTLX reserves the right to assert additional grounds of invalidity, including under 35 U.S.C. §§ 102, 103, and 112, as warranted by further investigation, discovery, and the development of the record. This includes, but is not limited to, grounds of invalidity based on prior art, including publicly available information demonstrating that Link-Net was in use before the priority dates of the Asserted Patents.

## COUNT VII
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE ’558 PATENT

102. UTLX incorporates and realleges each allegation in paragraphs 1 through 34 above as though fully set forth herein.

103. BWE has accused UTLX of infringing independent claims 1, 17, 27, 42, and 52 of the ’558 Patent, as well as claims dependent from one or more of those independent claims, through what BWE characterizes as UTLX’s “Integrated Railcar Telematics Architecture (Link-Net / RailPulse).”

104. Independent method claims 1, 17, and 27 require, among other things, receiving movement-indicative sensor data from one or more sensors associated with a WCD transported by a mobile thing, determining or computing reference data from sensor data, using the reference data to normalize or calculate movement data, and identifying or determining a mobile thing motion activity (“MTMA”) based on the resulting normalized or movement data.

105. UTLX does not itself perform those claimed sensor-processing operations. Link-Net is a fleet-management and customer-service application and was not developed to receive and process movement-sensor data in the manner claimed, determine or compute the claimed reference data or reference framework, normalize movement-sensor data with such reference data, calculate the claimed movement data from such reference data, or identify an MTMA from the resulting normalized or movement data.

106. UTLX likewise does not develop or control the sensors, WCDs, firmware, or sensor-processing technology incorporated into third-party telematics or RME equipment associated with UTLX railcars. To the limited extent UTLX railcars are equipped with such technology, the underlying telematics and sensor functionality is supplied by independent third-party vendors.

107. BWE's charts in the Demand Letter do not identify facts showing that UTLX performs the specific reference-data, normalization, movement-calculation, and MTMA-determination limitations of claims 1, 17, or 27. Instead, BWE equates generalized concepts such as baselines, thresholds, historical information, maintenance status, inspection status, geofence information, and other operational data with the claimed reference data and reference framework, and equates generalized railcar movement, condition, repair, maintenance, or exception events with the claimed MTMA.

108. Claims 42 and 52 are system claims requiring memories and processors executing computer program code that performs substantially the same claimed sensor-processing functions. Claim 42 requires code to receive first and second movement-indicative sensor data, determine reference data defining a reference framework, normalize the second data using the reference data, and identify an MTMA based on the normalized data. Claim 52 requires code to receive movement-indicative sensor samples, compute reference data defining a relationship to a reference framework, calculate movement data based on the reference data, and determine an MTMA based on that movement data.

109. UTLX does not make, sell, offer to sell, or import a system containing every element of claim 42 or claim 52. Link-Net does not itself include the claimed combination of sensors or WCD, memories and processors, and computer program code performing the specific reference-data, normalization or movement-calculation, and MTMA-determination functions required by those claims.

110. BWE's theory for claims 42 and 52 improperly combines separate technologies and systems (including third-party onboard telematics equipment, Link-Net, and RailPulse) into a single alleged system. UTLX is not a member of RailPulse, does not use or subscribe to RailPulse,

and Link-Net does not integrate with or operate as part of RailPulse. BWE therefore cannot establish infringement by attributing RailPulse components or functionality to UTLX as part of a purported UTLX system.

111. UTLX also does not "use" a system meeting every limitation of claim 42 or claim 52 under 35 U.S.C. § 271(a), because UTLX does not put into service and obtain the benefit of every element of the claimed combination identified by BWE. In particular, UTLX does not use or control the RailPulse components that BWE includes in its accused multi-component architecture.

112. Because UTLX does not perform every step of the asserted method claims, either itself or through acts attributable to UTLX, and does not make, use, sell, offer to sell, or import a system meeting every limitation of the asserted system claims, UTLX does not directly infringe the asserted claims of the '558 Patent under 35 U.S.C. § 271(a).

113. UTLX also does not induce infringement of the '558 Patent under 35 U.S.C. § 271(b). UTLX has not knowingly and intentionally encouraged any third party to perform every limitation of an asserted method claim or to make or use a system satisfying every limitation of an asserted system claim with knowledge that the encouraged conduct constitutes infringement.

114. UTLX does not contributorily infringe the '558 Patent under 35 U.S.C. § 271(c). UTLX does not sell, offer to sell, or import a component of a patented combination, or a material or apparatus for use in practicing a patented process, that constitutes a material part of the claimed invention, is especially made or especially adapted for use in infringement, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

115. UTLX therefore has not infringed and does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the ’558 Patent asserted by BWE against UTLX.

116. UTLX is entitled to a declaratory judgment that it has not infringed and does not infringe the ’558 Patent.

## COUNT VIII
## DECLARATORY JUDGMENT OF INVALIDITY OF THE ’558 PATENT

117. UTLX incorporates and realleges each allegation in paragraphs 1 through 34 above as though fully set forth herein.

118. The claims of the ’558 Patent asserted by BWE against UTLX are invalid under 35 U.S.C. § 101 because they are directed to patent-ineligible subject matter.

119. The asserted claims are directed to collecting movement-related sensor data, mathematically processing that data relative to reference information, and classifying the resulting data as a mobile thing motion activity.

120. Independent method claims 1, 17, and 27 recite variations of that same information-processing process. Claims 1 and 27 receive sensor data, compute or determine reference information, use the reference information to calculate movement data, and determine an MTMA. Claim 17 receives first and second sensor data, determines a reference framework, normalizes the second data using that framework, and identifies an MTMA from the normalized data.

121. Independent system claims 42 and 52 do not materially alter the character of the claimed subject matter. They recast substantially the same information-processing functions as generic memories, processors, and computer program code configured to receive sensor data, determine reference data, normalize or calculate movement data, and identify an MTMA.

122. The asserted claims do not recite an improvement in the operation or functionality of the claimed sensors, processors, memories, wireless communication devices, or other computing technology. Rather, those conventional technological components are used as tools to acquire information concerning movement and mathematically analyze and classify that information.

123. The claimed reference-data, normalization, movement-calculation, and activity-classification operations do not improve the underlying sensing or computing technology itself. They instead concern the manipulation and analysis of information obtained through conventional sensors and computers.

124. Neither the generic sensing and computing components nor the claimed mathematical and classification operations, considered individually or as an ordered combination, transform the claimed data-processing concept into patent-eligible subject matter.

125. The asserted dependent claims add conventional statistical, temporal, frequency-domain, scoring, sensor-selection, and activity-responsive functions but do not alter the basic character of the claims as sensor-data collection, mathematical analysis, and classification or otherwise recite a technological improvement sufficient to render the claims patent eligible.

126. The '558 Patent's specification acknowledges that mathematical and statistical analysis of sensor data for identifying human motion activity was known before the claimed inventions, including the use of averages, variance or standard deviation, and other statistical measures. The specification further employs conventional mathematical techniques, including frequency-domain analysis, to distinguish among different motion activities. The asserted claims use sensors and generic computing components to obtain movement-related information and apply mathematical and statistical processing to classify that information and permit responsive actions,

rather than reciting an improvement to the operation of the underlying sensors, processors, memories, or wireless communication devices themselves.

127. UTLX therefore is entitled to a declaratory judgment that the claims of the ’558 Patent asserted by BWE against UTLX are invalid under 35 U.S.C. § 101.

128. UTLX reserves the right to assert additional grounds of invalidity, including under 35 U.S.C. §§ 102, 103, and 112, as warranted by further investigation, discovery, and the development of the record. This includes, but is not limited to, grounds of invalidity based on prior art, including publicly available information demonstrating that Link-Net was in use before the priority dates of the Asserted Patents.

## COUNT IX
## VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/2SSS

129. UTLX incorporates and realleges each allegation in paragraphs 1 through 34 above as though fully set forth herein.

130. Section 2SSS of the Illinois Consumer Fraud and Deceptive Business Practices Act makes it an unlawful practice for a person, in connection with the assertion of a United States patent, to send a written communication stating that an intended recipient or affiliated person is infringing or has infringed a patent and bears liability or owes compensation if, among other things, the communication fails to include “the factual allegations concerning the specific areas in which the intended recipient’s or affiliated person’s products, services, or technology infringed the patent or are covered by the claims in the patent.” 815 ILCS 505/2SSS(b)(4)(C).

131. UTLX is an “intended recipient” within the meaning of 815 ILCS 505/2SSS(a). Among other things, UTLX obtains third-party telematics equipment and/or related services in the commercial market for use in connection with its railcar operations and not for resale, and BWE

expressly identified such third-party telematics equipment and services as part of the technology allegedly infringing the Asserted Patents.

132. BWE sent the Demand Letter to UTLX in connection with the assertion of the Asserted Patents. The Demand Letter states that UTLX infringes the Asserted Patents, asserts that UTLX has engaged in past unauthorized use, and demands that UTLX either obtain a license from BWE or cease the allegedly infringing activities and provide compensation for past use.

133. The Demand Letter fails to provide concrete UTLX-specific factual allegations showing how UTLX's actual products, services, or technology perform numerous limitations of the Asserted Patents, as required by 815 ILCS 505/2SSS(b)(4)(C).

134. In particular, BWE's infringement allegations are premised centrally on what BWE calls UTLX's "Integrated Railcar Telematics Architecture (Link-Net / RailPulse)." But UTLX is not a member of RailPulse, does not use or subscribe to RailPulse in its fleet-management or operational activities, and Link-Net does not integrate with, exchange data with, or otherwise operate as part of any RailPulse system or architecture.

135. BWE's charts in the Demand Letter likewise fail to identify particular UTLX technologies that perform numerous claimed functions. Instead, the charts repeatedly rely on generalized assumptions and qualified formulations such as "on information and belief," "may include," and "is reasonably understood to be equipped," and equate broad categories of railcar-operational information or workflows with specific claim limitations without identifying concrete facts concerning the particular technology actually used by UTLX.

136. For example, with respect to the '273 Patent and '558 Patent, BWE does not identify particular UTLX technology that performs the claimed reference-data, coordinate-framework, normalization, movement-calculation, and MTMA-determination operations, but

instead equates generalized concepts such as baselines, thresholds, historical data, geofence information, maintenance status, and other operational information with those limitations.

137. With respect to the ’914 Patent and ’951 Patent, BWE similarly equates ordinary railcar monitoring, maintenance, repair, inspection, customer-service, and asset-management functions with materially different claimed concepts such as “user activity,” “surveillance mode,” “user-defined response,” a “user need for assistance, an accident, or a crime,” and first and second investigation processes, without identifying facts showing that UTLX’s actual technology performs those claimed functions.

138. The deficiencies are not cured by BWE’s inclusion of charts in the Demand Letter. Although the charts reproduce claim language and provide generalized descriptions of railcar-industry systems, technologies, information, and workflows, they do not provide concrete UTLX-specific factual allegations showing how particular UTLX products, services, or technology perform numerous claimed limitations. Indeed, the Demand Letter expressly states that the enclosed charts provide only “representative examples” and are not intended to limit BWE’s infringement position to any single vendor, implementation, device model, software platform, customer deployment, or telematics configuration.

139. On information and belief, BWE’s infringement assertions against UTLX lacked a reasonable factual basis and were objectively baseless. BWE’s infringement theory rests centrally on the assertion that Link-Net and RailPulse form an integrated UTLX architecture, even though UTLX is not and has never been a member of RailPulse, does not use or subscribe to RailPulse, and Link-Net does not integrate or exchange data with RailPulse. BWE’s charts in the Demand Letter likewise fail to identify UTLX-specific technology performing numerous material

limitations of the Asserted Patents and instead substitute generalized rail-industry information and assumptions for facts concerning UTLX's actual systems.

140. On information and belief, BWE made those assertions in bad faith. Among other things, BWE sent its infringement accusations without confirming the basic factual premise that UTLX uses RailPulse, relied repeatedly on qualified and generalized assumptions in place of UTLX-specific facts, and sent substantially similar enforcement demands to multiple participants in the railcar industry. BWE could have discovered from a simple internet search that UTLX is not and has never been a member of RailPulse, does not use or subscribe to RailPulse, and Link-Net does not integrate or exchange data with RailPulse.

141. Accordingly, BWE's transmission of the Demand Letter to UTLX constitutes an unlawful practice under 815 ILCS 505/2SSS(b)(4)(C).

142. As a direct and proximate result of BWE's unlawful practice, UTLX has incurred actual economic loss in investigating and responding to BWE's patent assertions and otherwise addressing the deficient Demand Letter, in an amount to be proven at trial.

143. Pursuant to 815 ILCS 505/10a, UTLX is entitled to recover its actual damages and such other relief as the Court deems proper and, if UTLX is the prevailing party, reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, UTLX respectfully requests that this Court enter final judgment in its favor and against BWE as follows:

A. A declaratory judgment that UTLX has not infringed and does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim asserted by BWE against UTLX under the Asserted Patents;

B. A declaratory judgment that the claims asserted by BWE against UTLX under the Asserted Patents are invalid under at least 35 U.S.C. § 101;

C. A judgment that BWE violated 815 ILCS 505/2SSS by sending UTLX the Demand Letter without providing the concrete UTLX-specific factual allegations required by 815 ILCS 505/2SSS(b)(4)(C) showing how UTLX's actual products, services, or technology allegedly infringe the Asserted Patents or otherwise are covered by their claims;

D. An award to UTLX of its actual damages resulting from BWE's violation of 815 ILCS 505/2SSS, in an amount to be determined at trial, together with such other relief as is authorized by the Illinois Consumer Fraud and Deceptive Business Practices Act;

E. An award to UTLX of its reasonable attorneys' fees and costs pursuant to 815 ILCS 505/10a;

F. A determination that this case is exceptional under 35 U.S.C. § 285 and an award to UTLX of its reasonable attorneys' fees pursuant to that statute;

G. An award to UTLX of its taxable costs and such pre-judgment and post-judgment interest as permitted by law; and

H. Such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

UTLX demands a trial by jury on all issues so triable.

Dated: August 19, 2026

Respectfully submitted,

/s/ Michael J. Harris
Michael J. Harris
ARNOLD & PORTER KAYE SCHOLER LLP
300 North LaSalle Drive, Suite 3500
Chicago, Illinois 60654
Telephone: 312-583-2300
Facsimile: 312-583-2360
Email: Michael.Harris@arnoldporter.com

*Attorneys for Plaintiff,*
*Union Tank Car Company*